THOMAS MATTHEWS, JOSEPH MATTHEWS, JAMES MURRAY, AND OTHERS, *vs.* AUGUSTUS J. ALBERT AND OTHERS.

CORPORATIONS: INDIVIDUAL LIABILITY OF STOCKHOLDERS UNDER THE ACT OF 1852, CH. 338, SEC. 9: RECOUPMENT: PRACTICE IN EQUITY: CONTRIBUTION.—A company was incorporated under the provisions of the Act of 1852, Ch. 338, the 9th section of which provides, that the stockholders "shall be severally and individually liable to the creditors of the company in which they are stockholders to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such company until the whole amount of capital stock fixed and limited by such company shall have been paid in, one-half thereof in one year, and the other half thereof within two years from and after the incorporation of said company, or such corporation shall be dissolved." On a bill filed by creditors of the company to make certain of the stockholders liable under this clause, the latter, besides a general denial of liability, sought to set off the amount of certain loans made by them to the company, against the claims of the creditors, HELD :

1st. That though the doctrine of recoupment might properly arise between the company claiming the payment for stock subscribed, and the stockholders who had loaned money to the company, to an amount equal to their stock, or had paid debts of the company to that amount, it by no means follows, that the stockholders are absolved from liability to the creditors of the company.

2nd. The statute does not refer to them in their corporate capacity, but as individual stockholders ; and it declares their liability without reference to the amount they may have paid in on their stock.

3rd. If the stockholders had paid for their stock, and *subsequently* became creditors of the company to an amount equal to their stock, by so doing they would be clothed with equities equal to any other creditors who may have become so by contracts with the company.

4th. That the stockholders were not liable for debts contracted by the company subsequent to their parting with their stock.

5th. That a creditor of the company who receives stock from the company as collateral security for his loan, is not personally subject to any liability as stockholder, but is protected by the provision of the 13th section of the Act of 1852, Ch. 338.

6th. That this proceeding being in equity, where the liability of the several defendants may be ascertained and enforced with respect to each other, each of them may insist upon contribution from the others, and such other of the stockholders as are liable under the statute should be made to contribute rateably their proportion of the complainants' claims.

APPEAL from the Superior Court of Baltimore City.

The facts of this case are stated in the opinion of this Court.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*George H. Williams* for the appellants, argued :

1st. That the 9th section, of the Act of 1852, ch. 338, makes all the shareholders, "severally and individually liable" to an amount equal to their stock, unless the capital be paid in as therein prescribed.

2nd. That sec. 12, of said law, peremptorily declares " that nothing but money shall be considered as payment of any part of the capital stock."

3rd. That sec. 13 provides that no person holding such stock as collateral security shall be personally subject to any liability as stockholders of such company ; but the person pledging the stock shall be considered as holding the same, and shall be liable as stockholders accordingly.

4th. That the prayer of the bill suffices to cover responsibility for all indebtedness of the company, certainly up to the 29th of January, 1859, and further, if any liability exists by the true construction of the 9th section of the Act; and it is submitted the liability by it is not restricted to debts while the defendants were shareholders, on the contrary, in the event of the capital not being paid in, all the stockholders (without saying at what time they must be such) are to be liable. The proof shows the indebtedness to have existed at the time the Alberts were shareholders, except the sum of $263.77 due to Murray & Hazlehurst, and this amount is too trifling when compared with the rest of the debts to be worth much controversy ; all the residue of the indebtedness beyond doubt existed while the Alberts' held the stock.

5th. That as nothing but money can be considered as

payment for stock, how stand the Alberts? Usury is not payment in money. The Legislature stipulated in these charters (for the protection of creditors and the community) for actual *cash*, and which was to be paid within a *certain time*.

Taking stock from the company at an usurious *bonus* on a loan to the company, is not paying in money for its capital stock. William J. Albert therefore owes for his stock $12,000, and for his liability under the 9th section $12,000 more, say $24,000. Now assuming the case cited, *Garrison vs. Howe*, 14 *N. Y. Rep.*, to be good law (and which is denied), after crediting him with his claim of $12,000 as a creditor of the company, he is still liable for the remaining $12,000.

So with A. J. Albert, he is liable for $1,500 for his stock; and for his liability under the 9th section for $1,500 more. And after, in like manner, crediting him with his claim, as creditor, he also yet remains liable for $1,500.

6th. That there can be no pretence upon the proof that Tiernan ever was, or meant to be anything but a creditor holding stock as a collateral security, and exonerated from all liability by the thirteenth section; that a corporation may pledge its own stock, and that the word "person" includes "corporations." *Angel and Ames on Corp. The Germania vs. The State*, 7 *Md. Rep.*, 6.

And further, that said stock was issued to Tiernan without his knowledge, and in the hope that he would also take it as usury; but that so soon as sent to him and before the maturity of the loan, he returned it for the purpose of having the truth endorsed on it, declining the usury. There is no proof in the cause that anything was said to him about taking it as a *bonus*. On the contrary he would not hold it as issued.

7th. That the object of the appellees as endorsed by the

decree below is to add to the simple and plain language of the Act of Assembly, words not placed there by the Legislature, and such as the following : Provided, however, that if any stockholder pays in his proportion of the capital stock within the time prescribed, he shall not be further liable, and provided also that if liable, stockholders may offset to the claims of creditors seeking to make them liable, any demands of their own against said company, though the capital be not so paid in. And provided also, that furnishing commodities to such company or usury charged to it, shall be equivalent to money, and considered as money paid in, the 12th sec. of this Act, to the contrary notwithstanding. Upon the construction of statutes, see *Abley vs. Dale*, 73 *Eng. C. L. Rep.*, 390. *Allen vs. Mutual Fire Insurance Co.*, 2 *Md. Rep.*, 111. *Collins admr. vs. Carman's Exc'r*, 5 *Md. Rep.*, 529. *Alexander vs. Worthington et al.*, *Id.* 485. *Scaggs vs. Balto. & Wash. R. R. Co.*, 10 *Md. Rep.*, 277. *Frazier vs. Warfield*, 13 *Md. Rep.*, 301. *State vs. Wayman*, 2 *G. & J.*, 254.

*J. Mason Campbell* and *Bernard Carter* for the appellees.

The alleged liability of the defendants grows out of the provisions of the Act of Assembly of Maryland of 1852, ch. 338 ; the 9th section of this Act is in these words :

" *And be it enacted,* That all the stockholders of every company incorporated under this Act, shall be severally and individually liable to the creditors of the company in which they are stockholders, to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such company, until the whole amount of capital stock, fixed and limited by such company, shall have been paid in, one-half thereof in one year, and the other half thereof within two years, from and

after the incorporation of said company, or said corporation shall be dissolved."

The prayer of the bill of complaint in this case is, "that the liability of the defendants may be decreed as to debts created while they were stockholders." The complainants must therefore establish, that the Alberts were stockholders of the "Coal Oil and Paraffine Company," and that the debts of the complainants were created while they were such stockholders.

W. J. Albert first became a stockholder on the 12th of October, 1858, when he took 80 shares; on the 12th of November, 1858, he took 400 shares; and on the 7th of December, 1858, he took 40 shares. He ceased to be a stockholder on the 29th of January, 1859. Augustus J. Albert first became a stockholder on the 15th December, 1858, when he took 60 shares; and ceased to be a stockholder on the 29th of January, 1859.

Each of the complainants must therefore show, in order to recover against William J. Albert, that their debts were contracted between the 12th of October, 1858, and 29th of January, 1859; and as to Augustus J. Albert, that the said debts were contracted between the 15th of December, 1868, and 29th of January, 1859.

We have said that the prayer of the bill limits the liability of the stockholders to debts of the company contracted while they were stockholders. That this is the limit of their liability, see *Holyoke Bank vs. Burnham,* 11 *Cushing,* 183. *Curtis vs. Harlow,* 12 *Met.,* 3. *Moss vs. Oakley,* 2 *Hill,* 265, 268. *Tracey vs. Yeates,* 18 *Barb.,* 152, 154. *Adderly vs. Storm,* 6 *Hill,* 624. *Garrison vs. Howe,* 17 *N. Y. Rep.,* 465. See also 9 *Cush.,* 199.

It will hardly be contended we suppose by the complainants, (though hinted at in the bill,) that the transfer of their stock by the Alberts, on the 29th of January,

1859, did not divest them of their interest in the stock, nor end their liability under the statute, so far as any are concerned who became creditors of the company after the 29th of January, 1859. There is nothing in the language of the Act of 1852, ch. 338, which compels those who become stockholders, always to remain so; and whatever might be the principles of law governing the case of a stockholder who should transfer his stock to an insolvent, for the purpose of defeating creditors, it is sufficient for this case to say, that there is nothing in this record which gives any such character to the transfer of this stock by the Alberts.

That a stockholder in these manufacturing corporations may transfer his stock, and so end his connection with the company and his liability for its debts, subsequent to the date of the transfer, see *Angell & Ames on Corp.*, sec. 534. *Holyoke Bank vs. Burnham*, 11 *Cushing*, 183.

But secondly, we contend that upon a proper construction of the Act of 1852, ch. 338, considered in connection with the facts in the case, neither of the complainant creditors can recover against either of the Alberts. The relation of each of the Alberts to the company is two-fold; they are stockholders in the company, and at the same time they are creditors of the company. The amount of stock held by William J. Albert, in the company, was 520 shares, which, at $25 *per* share, is $13,000. The 9th section of the Act of 1852, ch. 338, makes the amount of stock held, the measure of the liability of the stockholder to the creditor of the company. If, therefore, the only relation which W. J. Albert occupied to the company was that of stockholder, he would be liable to the creditors of the company to discharge the debts due by it to them, to the extent of $13,000. But W. J. Albert is a creditor of the company to the amount of $13,000, for money loaned and which was appropriated to the payment of the debts of the company from time to time.

We contend, therefore, that though bound as stockholder to discharge the debts of the company to the extent of $13,000, yet that in point of fact he has fulfilled this duty by paying the debts of the company, by advancing the $13,000, the advancing of which constitutes him a creditor. *Garrison vs. Howe*, 17 *New York*, (3 *Smith*,) 461. *Bank of Poughkeepsie vs. Iverson*, 24 *Wend.*, 479. See also 4 *J. J. Marshall*, 1.

But, 3rd, we contend that William and Augustus Albert, as creditors, are entitled to stand on the same footing, and share with the complainants in any recovery which may be had against the stockholders in the company, the Alberts themselves included. *Briggs vs. Penniman*, 8 *Cowen*, 387 *and* 392.

4th. We have been so far considering the right of the complainant creditors to recover their respective debts as if the rights of each stood on the same basis.

We insist, however, that William H. Tiernan, one of the complainants, is not a non-stockholder creditor, but is a stockholder in the " Coal Oil and Paraffine Company," and as such, is to the extent of his stock, as much liable to the non-stockholder creditors as are the Alberts. Tiernan supposes that he is relieved from any responsibility as stockholder by the 13th section of Act of 1852, ch. 338, and that he stands as a creditor of the company, and on a *par* with other creditors who are not stockholders.

The evidence in the cause shows that on the 8th of January, 1859, a certificate of stock in the usual form of certificates of this company, and absolute on its face, was issued to William H. Tiernan for 80 shares, which certificate was delivered to Tiernan and held by him without objection or exception, till more than a month after the 8th of January, 1859; after which interval, on application to the President of the company, this certificate was endorsed by the latter in words declaring that said certificate had

been deposited with Tiernan as collateral security for the payment of a loan of $2,000 made by said Tiernan—the certificate to be returned on payment of the loan. Now we contend : That the 13th section of Act of 1852, ch. 338, does not refer to the case of a person taking stock from the company as collateral security for a loan made to it by such person, when it declares that " no persons holding stock as collateral security shall be personally subject to any liability as stockholders of such company."

GOLDSBOROUGH, J., delivered the opinion of this Court.

On the 1st of September, 1858, the "Coal Oil and Paraffine Company of Baltimore," became incorporated in accordance with the provisions of the Act of 1852, ch. 338. Soon after the organization of the company, it incurred sundry liabilities, and amongst them, the claims alleged to be due to the complainants named in the bill of complaint in this case. Judgments were obtained by the complainants against the company on their claims. Executions were issued thereon, and were returned *nulla bona.* Being, as they allege, without remedy, except in a Court of Equity, and having discovered that the appellee, Wm. J. Albert, had become a stockholder of the company to a large amount of shares, the complainants seek by this bill to recover their claims from him under the provisions of the 9th section of the Act of 1852, ch. 338.

This bill was subsequently amended by making the corporators and Augustus J. Albert, (who had become a stockholder) parties defendant.

The corporators suffered a decree *pro confesso* to go against them. In this state of the case, it was " agreed that the question of the liability of the defendants other than William J. Albert and Augustus J. Albert, shall be postponed until the determination of the liability of

the said Alberts, and that any decree passed in regard to the liability of said Alberts may be taken to the Court of Appeals, to be there decided without objection, either in this Court or in the Court of Appeals, on the ground that the liability of the other defendants is left undetermined by said decree. The responsibility of the Alberts is claimed upon the ground, that under the terms of the 9th section of the above Act, they, as stockholders, were " severally and individually liable to the creditors of the company to an amount equal to the amount of the stock held by them respectively, for all debts and contracts made by such company, until the whole amount of the capital stock, fixed and limited by such company, shall have been paid in ; one-half thereof in one year, and the other half thereof within two years, from and after the incorporation of said company, or such corporation shall be dissolved."

The claims sought to be recovered in this suit, were contracted while the Alberts were stockholders.

Though the doctrine of recoupment, upon which the bill in this case was dismissed, might properly arise between the company claiming the payment for stock subscribed, and the stockholders who had loaned money to the company to an amount equal to their stock, or had paid debts of the company to that amount, it by no means follows, that the stockholders are absolved from liability to creditors of the company. This responsibility is absolutely fixed by the Act of 1852, from which there is no escape, until the provisions of the 9th section are complied with, and it is not pretended that such is the case.

The defendants occupied the two-fold relation of debtors to the company for the amount of their stock at par value, and as debtors under the Statute, to the creditors of the company to an amount equal to their stock, for all debts and contracts created while they were stockholders. In *Briggs vs. Penniman,* 8 *Cowan,* 396, the Court say, "the

Statute does not refer to them in their corporate capacity, but as individual stockholders ; and it declares their liability, without reference to the amount they may have paid in on their stock.''

In this connection, it is proper to say that in the terms which controlled the decision, the Statute of N. Y. is substantially the same as the Act of 1852, ch. 338.

The Judge of the Superior Court has correctly construed the decision in *Garrison vs. Howe*, 17 *N. Y. Rep.*, 462, that if the stockholders had paid for their stock, and *subsequently* became creditors of the company to an amount equal to their stock, by so doing they would be clothed with equal equities to any other creditors who may have become so by contracts with the company. This theory is sustained by the case of *Briggs vs. Penniman*, before referred to. But the Alberts cannot claim to hold this relation, as they have never paid anything for their stock according to the evidence in the cause. It appears from the record that William J. Albert became the owner of 480 shares of stock, equal to $12,000, between the 3rd of October, 1858, and the 5th of November of the same year, and that Augustus J. Albert became the owner of 60 shares, equal to $1,500, on the 6th of December, 1858. Both of these defendants parted with their stock on the 29th of January, 1859.

According to the evidence of Samuel M. Dukehart, the claim of the appellants, Thomas and Joseph Matthews, consisted of a judgment on a note of the company for $1,092.40, given on the 1st of January, 1859, and a bill of lumber furnished the company between the 4th and 15th of January, 1859.

The claim of Murray & Hazlehurst consisted of a judgment on a note of the company for $2,238.20, issued on the 1st of January, 1859, and an open account for mate-

rials furnished between the 21st of January, 1859, and the 30th of March of the same year.

These claims are proved by Compton Spencer. But as it does not appear from the evidence what portion of the account was contracted before the Alberts parted with their stock on the 29th of January, 1859, the account is not so proved as to justify its allowance.

The claim of W. H. Tiernan is for $2,000, money alleged to be loaned to the company on the 8th of January, 1859, and is proved by James C. Barry. But it is insisted by the appellees that Tiernan, instead of being a non-stockholder creditor, is, according to the evidence, a stockholder, and as much liable as the Alberts. We do not concur in this view of the relation of Tiernan to the company. In our opinion his claim is for money loaned, and the stock transferred to him was held by him as collateral security for his loan, and so holding it, he is not personally subject to any liability as stockholder, but is protected by the provision of the 12th section of the Act of 1852, ch. 338.

According to our construction of the 9th section of this Act, we think the appellees, the Alberts, are severally and individually liable for the claims of the appellants, to the extent of their stock, except the claim of Murray & Hazlehurst for $263.77. This construction is sustained by the case of *Briggs vs. Penniman,* in which the Court say, "every stockholder in a company of this description incurs the risk of not only losing the amount of stock subscribed, but is also liable for an equal sum, provided the debts due and owing at the time of dissolution are of such magnitude as to require it."

In construing the 9th section of the Act of 1852, it is manifest that the Legislature designed to protect creditors of the company from loss. The language is unequivocal, and clearly intends that until the amount

of all the stock is paid up, the stockholders shall be respectively liable to the creditors of the corporation to an amount equal to the whole of the stock respectively held by them. The proceeding here, however, is in equity where the liability of the several defendants may be ascertained, and enforced with respect to each other, and when each of them may insist upon contribution from the others ; and as it is just and proper that such other of the stockholders as are liable under the Statute, should contribute rateably their proportion of the complainants' claims, we will sign a decree reversing that of the Court below, and remand the cause, that an account may be stated in conformity with this opinion.

*Decree reversed, with costs to the appellants,*
　　　　*and cause remanded for further proceedings.*

(Decided May 1st, 1866.)